O’Neall, J.
delivered the opinion of the Court.
The motion in this case suggests three inquiries for our consideration : viz. 1st. As to the causes, for which the Court may discharge the jury, and remand the prisoner for a second trial, alter the jury have been charged, in a capital case. 2d. The time, at which a nolle prosequi may be entered. 3d. The effect oí a nolle prosequi, after the jury have been charged.
1st It seems at one time to have been thought, that, after the jury were charged, they must remain together until the verdict was rendered ; and that if they were permitted to disperse, even for i time, however short, it was an acquittal. This notion has, however, heen long since overruled, see 2 Johns. Ca. 303, et seq. ami a criminal case, uow, may, if the trial cannot be gone through in one day, be adjourned from day to day, until completed. 1 Ch. Cran. Law, 628. In England, the practice still appears to be to keep the jury together during the adjournment, under the ehargf of sworn bailiffs. In this State, they are air lowed to disperse.
*653 The consent of the prisoner, aud the- illness, or death of a juryman, would appear, according to Ohitty, to be the only causes, which would, in the English courts, authorize the discharge of the jury without agreeing upon a verdict, and remanding the prisoner for a second trial. 1 Ch. Crim. Law, 629-30. But other causes have certainly been allowed, .even there, to have this effect. If the prisoner is found during the trial, to be insane ; or in a fit; or be taken in labour; or if one of the jurors escape from his fellows, and go off, or be intoxicated ; all these have operated to discharge the jury, and to subject the prisoner to a second trial. 1 Hale, 35. Leach, 443. Foster, 76. 2 Hale, 296. To these, another may well be added; that the jury cannot ag'ree on a verdict. .The proposition, that the Judge can have them conveyed from Court to Court, on his circuit, until they do agree, is at war with all our notions, either of their rights, or of the rules of justice and propriety. It has never been acted on in this State; and I have no hesitation in saying, that it is not law. It is equally absurd to say, that the jury must be starred into a verdict. Their verdict ought to be the result of calm, and deliberate reflection, aud not force. If, therefore, after a sufficient time has been afforded them to discuss the subject, and come to their conclusion, they cannot agree, jhey ought to be discharged.
In New-York, in a case of misdemeanor, the jury were unable to agree on a verdict; and one of them was therefore directed by the Court to withdraw, and only eleven answering on the call, they were discharged. It was contended that this was an acquittal of the defendant, but the Court held that it was not; and Kent, Justice, intimates, that it would not have been an acquittal even in a capital case. The People v. Olcott, 2 Johns. Ca. 301. In the case of the U. S. v. Perez, 9 Wheat. 579, it was held, that if the jury would not agree on a verdict in a capital case, they might be discharged, and that this would not be an acquittal.
In this State, the question has not met with any decision going beyond the English cases. In Bostick’s case, cited 1 M’C. 254, a juryman was taken ill, and the jury‘were discharged in consequence ; and it was held, that the prisoner might be tried again. <In the case of the State v. Burket and Boatright, 2 Mill, 155, the jury could not be completed for the want of [lesmen : and it was held, that the prisoners had not been put upon their .trial, and, *654 therefore, they were not discharged. In Gulden’s case, 2 M’C.524, the Solicitor entered a nolle prosequi, after the finding of the bill, but before the jury were charged. The'prisoner in that case, had not been put in jeopardy of life, and was therefore remanded, to enable the solicitor to give out another bill of indictment. Spurgin’s case, 1 M’C. 252, I do not regard as adding to the causes, allowed by the English cases, to subject a prisoner to a second trial. He was indicted for horse-stealing, and convicted of petit larceny. The verdict might have been treated as a verdict of guilty, and the finding of petit larceny rejected as sur-plusage; and this was the opinion of the distinguished judge, who delivered the opinion. It was, therefore, a favour to the prisoner, to allow him a second trial, and in that point of view, no innovation on the English cases. In Edward’s case, 2 N. & M. 17, Judge Nott says,"“ when a criminal case is put to a jury, it can-Vnot be withdrawn, except by consent of the accused ; or by some unavoidable accident to one of the jury, or the Court.”
Taking, then, our own decisions, and those of the 17. S Courts, of Nevv-York, and of England, together, we are enabled to say, that a jury, after they are charged, can be discharged, and the prisoner tried a second time, for the following causes only: 1st. The consent of the prisoner. 2d. Illness of one of the jury, the prisoner, or the Court; 3d. Absence of one of the jurymen. Or 4th. The impossibility of their agreeing on a verdict. Beyond these, I apprehend the Court has no right to go. It is said, that it is a matter of discretion with the Court, to discharge the jury, whenever they may think it consistent with the ends of justice. It is true, it is a matter of discretion, but in the language of Ju-nius, it is a “ legal discretion,” and must be exercised in conformity to known rules. Arbitrary discretion is but another name for caprice, or favour. Under its exercise, the boldest may tremble, and the free be made slaves. It is better, therefore, to act upon a fixed rule, even if it should now and then enable the guilty - to escape, than to act without a rule^^ the terror and danger of the innocent. ^
2d. The Solicitor has the right to enter a nolle prosequi, at any time before the jury is charged, but not after. Cliitty, in his Criminal Law, 478, says, a nolle prosequi may'be entered during' all the stages of pleading to the indictment. As t» the power of entering it after issue, lie is silent, and I take it, therefore, tlmt in Ms. opinion, it could not be done. But Golden’s case, (supra) *655 as well qs sound reason, will carry this power up to tile time when the jury are charged ; for ar this moment, and not before, commences the jeopardy of life to the prisoner. The maxim of the common law, that “ no mau shall be twice put in jeopardy of his life for the same offence,” is the foundation of the rule, which prevents the arrest of the trial after this stage, except for the causes already noticed.
But say that the second question was anew one, and that it must be settled by general principles, could we fail to come to the same conclusion ? Starting with the common law maxim before, us, “ no man shall he twice put in jeopardy of his life for the same offence we ask what is meant by jeopardy of his life ? It is where one is put upon his trial, upon a valid indictment, for a capital offence. It may result in his condemnation, and hence he is in jeopardy. To give every opportunity to innocence to escape, the law humanely affords to the prisoner the arbitrary choice of his jurors: he may challenge twenty of them peremptorily. After he has selected his jury, and they are charged with his case, can the Solicitor from defect of evidence, or an objection to a juryman, say, I will not now proceed with the trial; 1 will enter a nolle prosequi, and at another term give out a second one, and be prepared then with more evidence, and have a jury better suited to my wishes l This would, indeed, be literally twice putting the prisoner's life in jeopardy for the same offence. Cany the matter a little farther, and as was well argued by the learned counsel for the prisoner, allow this right to the Solicitor, and the prosecutor is prepared, by the first trial, to meet all the points of the prisoner’s d-fence, and even to shape his own testimony to conviction. This would be making the Court hold out every inducement to perjury, and subornation of peiju#^, and con/ert jury trials into engines to oppress and destroy, at the pleasure of the prosecutor. Such is not, cannot, and never will be the law.
It is said, however, that in this case, the Solicitor having discovered the bias of the foreman’s mind, had the right to arrest the trial; and to claim that the Court should discharge the jury, and remand the prisoner. The Solicitor acted from motives which do honor to him; and no man, who knows him, will believe that his course was adopted from any other promptings, than those of a high sense of duty to the State. But no matter how laudable may have been, his motives, I apprehend, it would be *656 utterly unsafe, at such a moment, to allow such an objection to prevail. This Court has over and over again said, that in no case in the sessions will they grant a new trial, when the verdict is for the defendant. It is the extension of the principle that no man shall be twice put in jeopardy of his life, so far, that no man shall be twice tried for the same offence, when one jury have passed upon, and declared his innocence. It is giving to the prisoner the benefit, not only of the prejudices of his jurors, but even of the errors of the judge. Where would be this protection if the Solicitor could say, I find the jury are with you, and therefore, will enter a nolle-prosequi, and give out, and try you on a second indictment! It would be, in effect, allowing to the Solicitor a power which this Court denies that itself possesses, of subjecting the prisoner to a new trial, as often as it might be necessary to obtain a verdict of guilty.
But suppose the prisoner had been tried and found guilty, and was moving for a new trial on the ground that one of the jury believed, that “he who sheddeth man’s blood, by man shall his blood be shed,’’ and that this belief caused his conviction, the ground would avail him nothing. He would be answered,' “you had your twenty challenges, and if you had cause, you might on cause shewn, have challenged every man on the panel; you should have- objected as they came to the book to be sworn, and before they are sworn: your objection, if of any value, is now too late.” Ought the State to be more favoured than the prisoner ! Certainly not. If the prisoner had the prejudice of a single juryman in his favour, and the State, permitted him to be sworn, and the jury were charged with the case, it was the protection,.perhaps of error, but certainly a legal protection. The prisoner’s life was in jeopardy, and objections to the jury, or any of them, could no longer be made.
3d. The Solicitor having entered a nolle prosequi, after the jury were charged, and they being discharged, without any lawful cause, upon which the prisoner can be remanded, for trial a second time, it follow's that he is acquitted.
The motion is therefore granted, and the prisoner forever acquitted of the said offence, and discharged from prison,
Johnson, J. and Colcock, J. concurred.
Motion granted.